UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BARRY C. DOCKERY, | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. C-09-225 |
| | § | |
| U.S. DEPARTMENT OF JUSTICE, | § | |
| ET AL. | § | |
| Defendants | § | |

### MEMORANDUM OPINION AND ORDER
### DENYING  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this <u>Bivens</u> action, plaintiff claims that three federal employees were deliberately indifferent to his health and safety in violation of his Eighth Amendment right to be free from cruel and unusual punishment.[1]  In particular, he claims that Officer Deleon failed to protect him from an inmate assault because he failed to ensure that the kitchen was staffed with the appropriate number of officers, effectively allowing the assault to occur.  He claims that, following the assault,  Mid-Level Provider (MLP) Cabusao placed him in a solitary cell and failed to check on him for two days, and that Ms. Rivers-Graham knew of his injuries, but failed to have him transferred to an appropriate facility until two days after the assault.

The individual defendants have filed a motion to dismiss for failure to state a claim, and in the alternative, motion for summary judgment to deny plaintiff's claims on the

---

[1] <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).  Plaintiff also brought a tort claim against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 (b) and 2674; however, plaintiff's FTCA claim was dismissed (D.E. 34), and his motion for reconsideration on this claim was denied. (D.E. 42).

grounds of qualified immunity. (D.E. 38). Plaintiff has filed a response in opposition. (D.E. 39).

For the reasons stated herein, defendants' motion to dismiss/motion for summary judgment is denied.

## I.      Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Upon consent of the parties (D.E. 12, 30), this case was referred to the undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 14). See 28 U.S.C. § 636(c).

## II.     Procedural background.

Plaintiff is a federal prisoner currently incarcerated at the United States Penitentiary in Atlanta, Georgia, although his lawsuit concerns events that occurred while he was in custody at the Federal Correctional Institution ("FCI") in Three Rivers, Texas. He filed the instant action on August 31, 2009, alleging that on July 24, 2007, another offender threw a hot liquid on him, causing him serious bodily injury. (D.E. 1). He claimed that Officer Deleon effectively allowed the assault to occur by failing to adequately staff or supervise the kitchen. Id. He claimed further that he was denied effective medical treatment following the assault, in deliberate indifference to his serious medical needs. Id. He named as defendants the U.S. Department of Justice (DOJ) , the Federal Bureau of Prisons (BOP), Warden Dan Joslin, Officer Deleon, Ms. Rivers-Graham, and MLP Cabusao. Id.

2

Following an October 29, 2009 <u>Spears</u>[2] hearing, plaintiff filed an amended complaint to name the United States as a defendant, and to allege a negligence claim under the FTCA. (D.E. 10).  On January 14, 2009, plaintiff's claims against the DOJ, BOP, and Warden Joslin were dismissed, and service was ordered on the United States, Officer Deleon, Ms. Rivers-Graham, and MLP Cabusao.  (D.E.17).

On March 29, 2010, defendants filed a motion to dismiss for failure to exhaust administrative remedies, and in the alternative, motion for summary judgment.  (D.E. 27). On April 14, 2010, plaintiff filed a response in opposition (28), and filed his own motion for summary judgment (D.E. 29), to which defendants filed a response. (D.E. 32).

On May 21, 2010, plaintiff's FTCA claim against the United States was dismissed. (D.E. 34).  The motion for summary judgment on behalf of the individual defendants on the grounds of failure to exhaust was denied.  <u>Id.</u>

On June 21, 2010, defendants Officer Deleon, MLP Cabusao, and Ms. Rivers-Graham filed the instant Rule 12(b)(6) motion to dismiss, and in the alternative, motion for summary judgment on the grounds of qualified immunity.  (D.E. 38).  On July 6, 2010, plaintiff filed a response in opposition to defendants' summary judgment motion.[3] (D.E. 39).

---

[2]  <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985); <u>see also</u> <u>Eason v. Holt</u>, 73 F.3d 600, 603 (5th Cir. 1996).

[3]  Plaintiff also filed a one-page cross-motion for summary judgment.  (D.E. 40).  That motion was denied because plaintiff failed to establish that there was no genuine issue of a material fact concerning each defendant's liability and his alleged damages.  (<u>See</u> D.E. 43).

III.    **Summary judgment evidence.**

In support of their motion to dismiss/motion for summary judgment, defendants offer the following:

Ex. 1: Declaration of Shannon Phelps, an FCI-Three Rivers employee who has "access to the files of Post Orders and Special Instructions."   Attached to her affidavit as Attachment A is Specific Post Orders which details the duties of compound officers 1 and 2.  Attached to her affidavit as Attachment B is Special Instructions for compound officers 1 and 2.  These orders and instructions were in effect on July 24, 2007, the day plaintiff was assaulted.

Ex. 2:  Relevant portions of plaintiff's prison medical records.

The summary judgment evidence establishes the following:

On July 24, 2007, plaintiff was escorted to the prison infirmary.  (DSJ Ex. 2 at 1). Plaintiff told the medical staff that "another inmate threw hot water on me."   Id.  Intake notes indicate that plaintiff was injured at 6:40 a.m., and he arrived at the infirmary at 6:45 a.m.  Id.  Plaintiff was examined by MLP Cabusao.  Id. at 1-2.  MLP Cabusao noted that plaintiff was conscious, coherent, and not in respiratory distress.  Id.  at 1.  His blood pressure was 100/70 and his heart rate was 70.  Id.  Upon examination, MLP Cabusao observed blistering on plaintiff's right lateral side of neck, lips, right upper eyelid, anterior side of neck, multiple blisters on upper back, and blisters on his right shoulder, upper arm, and forearm.  Id.  The blistered areas were tender on palpation.  Id.  Her assessment was

multiple second degree burns,[4] secondary to assault.  MLP Cabusao's treatment plan was noted as: cleansed and removed dead skin; applied Silvadene cream and gave tube to plaintiff to apply twice a day for 15 days; administered a Tetanus shot; prescribed Cephalexin, 500 mg. four times a day for 10 days; and prescribed Ibuprofen, 400 mg., 2 tablets three times a day on the first day, then 1 tablet three times a day for 10 days.  Id.  In his administrative notes, MLP Cabusao wrote "Follow up BID." Id.

Plaintiff was placed in a single-man cell in the Special Housing Unit (SHU).

On July 25, 2007 at 1:00 p.m., plaintiff was seen cell-side by a registered nurse, Nurse Messer.  (DSJ Ex. 2 at 3).  Nurse Messer changed the dressing on plaintiff's burns, and noted clear drainage from the mid-back area and right upper arm.  Id.  She also noted large blisters on his right upper arm.  Id.

On July 26, 2007, at 10:30 a.m., plaintiff was brought to the infirmary where he was seen by MLP Nunez.  (DSJ Ex. 2 at 4).  MLP Nunez noted that plaintiff had "extensive burns" to the right-side of his face, the back of his neck, his right upper chest, the right-side of his back, and his right arm and forearm.  Id.  She changed his dressing and applied the Silvadene cream.  Id.  Nurse Nunez noted further that: "Will be sent to University hospital due to extensive burns." Id.

---

[4]  A second-degree burn is defined as a burn that affects the epidermis and the dermis, and is classified as superficial or deep, according to the depth of the injury.  The superficial type involves the epidermis and the papillary dermis and is characterized by pain, edema, and the formation of blisters; it heals without scarring.  The deep type extends into the reticular dermis, is pale and anesthetic, and results in scarring.  Dorland's Medical Dictionary for Health Consumers, (Saunders 2007).

On July 27, 2007 at 2:00 p.m., Nurse Nunez noted in plaintiff's medical record that plaintiff had been admitted to Brooke Army Medical Center (BAMC) in San Antonio. (DSJ Ex. 2 at 4).   Nurse Nunez noted that plaintiff had been started on IV fluids and that debridment of his wounds would not be performed until Monday.

On July 28, 2007 at 5:35 p.m., Nurse Messer noted in plaintiff's medical record that he was being treated at BAMC, that he was stable, and that he was on IV fluids.  (DSJ Ex. 2 at 4).  He was scheduled to be seen by a doctor the following day.  Id.

On July 29, 2007, Nurse Messer noted that medical staff at BAMC reported plaintiff was stable and they were developing a plan of care.  (DSJ Ex. 2 at 4).

On July 30, 2007, Nurse Nunez noted that the BAMC doctors were not going to do any debridement or grafts on plaintiff, and that he was expected to return in one week.  (DSJ Ex. 2 at 5).

On July 31, 2007, Nurse Nunez reported that plaintiff's condition at BAMC was stable and that he was continuing to improve.  (DSJ Ex. 2 at 5).

On August 1, 2007, Nurse Nunez noted that BAMC had stopped giving plaintiff IV fluids and that he was almost ready for discharge.  (DSJ Ex. 2 at 5).

On August 2, 2007, at 6:00 p.m., plaintiff was returned to the infirmary at FCI-Three Rivers. (DSJ Ex. 2 at 5).  Nurse Messer noted that plaintiff was "in good spirits, alert, and oriented."  Id.  Nurse Messer  noted that plaintiff's burns were intact with a small amount of drainage.  Id.  Plaintiff reported that he was in pain and he was given Percocet.  Id.   At 6:25

p.m., Nurse Messer noted that plaintiff had eaten "100%" of his evening meal. Id. at 6. She noted that he was in medical isolation room and scheduled to be seen by a provider.

On August 3, 2007 at 11:00 a.m., plaintiff was seen by Dr. Richard Schmidt, the Chief Dental Officer at FCI-Three Rivers. (DSJ Ex. 2 at 6). Dr. Schmidt discontinued the Percocet and prescribed Tylenol #3. Id. He continued plaintiff on the Silvadene cream, and added Bacitracin ointment to also be applied to the burns. Id. In addition he prescribed plaintiff a stool softner and an antihistamine. Id. At 12:30 p.m., Nurse Messer cleaned plaintiff's wounds and applied the Bacitracin to plaintiff's face wounds. Id. She noted that plaintiff's right hand had slight edema. Id. She gave plaintiff Tylenol #3 for his pain. Id. At 3:00 p.m., Nurse Besser noted that plaintiff was stable, and he was escorted to the office for a family phone call. Id. at 7.

On August 4, 2007, at 6:30 a.m., Nurse Martinez noted that plaintiff was resting quietly. (DSJ Ex. 2 at 7). At 7:00 a.m., Nurse Martinez noted that plaintiff had no complaints, and that he would continue to be monitored. Id. At 8:00 a.m., Nurse Martinez noted that plaintiff's pain medication was effective. Id. At 12:00 noon, Nurse Martinez noted that plaintiff ate all of his breakfast and lunch. Id.

After being at FCI-Three Rivers for approximately one week, plaintiff was transferred to the Federal Medical Center (FMC) in Lexington, Kentucky, where he remained for eight to nine months for physical therapy. (D.E. 16).

At FMC-Lexington, on August 29, 2007 at 9:00 a.m., plaintiff was seen by Dr. Fred Lief, a physical therapist. (DSJ Ex. 2 at 8). Dr. Lief conducted a physical examination and

found that plaintiff had excellent range of motion, but acromioclavicular (A/C) joint pain at the end range of flexion on his right shoulder.  Id.  Dr. Lief ordered physical therapy three times a week for eight weeks.  Id.

On September 18, 2007, Nurse Irby noted that plaintiff needed assistance in applying cream to his back, but otherwise, he had no complaints.  (DSJ Ex. 2 at 8).  He was discharged from FMC-Lexington on that same date.  Id.

On October 10, 2007, plaintiff was seen by Dr. F. Rios for follow-up care of his burns. (DSJ Ex. 2 at 9).  Plaintiff complained of itching and limited range of motion in his shoulder. Id.  Dr. Rios continued plaintiff with physical therapy and ordered a follow-up appointment. Id.

On November 26, 2007, plaintiff reported to Dr. Rios for a follow-up visit.(DSJ Ex. 2 at 10).  Plaintiff rated his pain a "7" on a scale of 0 to 10, with zero being no pain, and ten, the worst pain imagined.  Id.  Dr. Rios modified plaintiff's work restrictions and continued him on Percocet.  Id. at 11.

On May 16, 2008, plaintiff was seen at the Federal Transfer Center in Oklahoma City, Oklahoma.  (DSJ Ex. 2 at 12).  Physician's Assistant L. Romero prescribed a cream for plaintiff to apply on his old burn wounds.  Id.

On December 3, 2008, plaintiff was seen at FCI-Three Rivers by D.O. Denny Tharp. (DSJ Ex. 2 at 13-15).  Plaintiff was prescribed a new TheraBan to strengthen his shoulder. Id.  Dr. Tharp noted keloid formation and he advised plaintiff to stay out of the sun.  Id.

On January 30, 2008, plaintiff was seen by Dr. Rios at FMC-Lexington.  (DSJ Ex. 2 at 16-18).  Plaintiff told Dr. Rios that the burned areas were healed, that his pain had improved, and that his range of motion was better, although his endurance was still reduced. Id.

On February 4, 2008, plaintiff was seen by Dr. Lief for counseling on exercises.  (DSJ Ex. 2 at 19-20).

On June 2, 2008, plaintiff was seen by Dr. Tharp for a chronic care visit at FCI-Three Rivers.  (DSJ Ex. 2 at 21-23).  On June 16, 2008, Dr. Tharp prescribed Elta Lite lotion for plaintiff to apply to the burn areas.  Id. at 24.

On May 25, 2009, plaintiff was seen by MLP Cabusao at FCI-Three Rivers.  (DSJ Ex. 2 at 25).  MLP Cabusao authorized a refill on Petrolatum External Lotion.  Id.

On June 2, 2009, Dr. Tharp refilled plaintiff's topical ointment.  0(DSJ Ex. 2 at 26).

On June 18, 2009, plaintiff was seen by Dr. Tharp at FCI-Three Rivers for follow-up. (DSJ Ex. 2 at 27-29).  Plaintiff advised Dr. Tharp that he was using the prescribed lotion on his keloid scars and staying out of the sun, and that he was using the Theraban to help with his range of motion of his right arm and shoulder.  Id. at 27.  Dr. Tharp noted that plaintiff's treatment goals had been reached.  Id. at 29.

On September 3, 2009, plaintiff was seen by Dr. Tharp at FCI-Three Rivers complaining that he could not sleep and he could not stop thinking about the assault.  (DSJ Ex. 2 at 30-32).  Dr. Tharp's diagnosis was Post Traumatic Stress Disorder (PTSD)

secondary to the assault.  Id. at 32.  Dr. Tharp ordered counseling and a follow-up appointment with psychology.  Id.

Plaintiff was transferred to USP-Atlanta, and on February 24, 2009, he was evaluated by Dr. Ivan Negron.  (DSJ Ex. 2 at 33-35).  Dr. Negron noted that plaintiff had suffered burns "on 35% of his body."  Id. at 33.  Dr. Negron refilled plaintiff's prescriptions for sun block and skin lotions.  Id.  Plaintiff remains under the care of Dr. Negron.

## IV.    Plaintiff's allegations.

Plaintiff is suing defendants in their individual capacities for deliberate indifference to his health and safety in violation of the Eighth Amendment.  He claims that Officer Deleon, who was working as the kitchen administrator at the time of the assault, failed to protect him from the assault in the first instance, because he failed to ensure that a guard was present on the cooking floor, as is required by the BOP's own policies.  He claims that MLP Cabusao was deliberately indifferent to his serious medical needs following the assault because she placed him in the SHU and failed to check on his status, or to order other medical personnel to check on his status, for over 24 hours.  He claims that Ms. Rivers-Graham was deliberately indifferent because she did not arrange for his transport to BAMC until three days after the assault.

## V.    Defendants' Motion to Dismiss.

Defendants' move to dismiss plaintiff's claims against them on the grounds that he has failed to state a constitutional violation.

A motion to dismiss under Rule 12(b)(6) tests the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied, 536 U.S. 960 (2002). It is not a procedure for resolving disputes about the facts or merits of a case. See 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d §1356 at 294 (1990). In ruling on a motion to dismiss, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Indest v. Freeman Decorating, Inc., 164 F.3d 258, 261 (5th Cir. 1999). The court may not look beyond the four corners of the plaintiff's pleadings. Indest, 164 F.3d at 261.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the assumption are true (even if doubtful in fact) . . . .

Bell Atlantic Corporation v. Twombly, 550 U.S. 544, _____, 127 S. Ct. 1955, 1964-65 (2007)(internal citations and quotations omitted). In other words, the claim to relief must be plausible, rather than just conceivable. Id., 127 S. Ct. at 1974.

Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. Ramming, 281 F.3d at 161. However, a motion to dismiss "is

viewed with disfavor and is rarely granted." <u>Gregson v. Zurich Am. Ins. Co.</u>, 322 F.3d 883, 885 (5th Cir. 2003) (citations omitted).

Defendants' motion to dismiss is denied.  As previously discussed in the order dismissing certain claims and retaining case (D.E. 16), considering the facts of the case in the light most favorable to plaintiff, plaintiff alleged sufficient facts to state claims of deliberate indifference against the defendants.  He claimed that Officer Deleon was in charge of the kitchen staffing and knew that a floor guard was missing, thus creating a potentially dangerous situation.  He claimed that MLP Cabusao failed to check on him after she dressed his wounds, and that he was not seen for over 24 hours by any medical personnel following the assault.  Finally, he claimed that Ms. Rivers-Graham knew of his injuries, but did not arrange for his transfer until after a nurse advised her to do so.  Thus, he alleged that these medical defendants were aware of his serious medical needs, but failed to provide or delayed appropriate medical attention.

## VI.    Defendants' Motion for Summary Judgment.

Defendants move for summary judgment on the grounds that they are entitled to qualified immunity.

### 1.      Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The Court

must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  See Milchalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005).  When a government official has pled the defense of qualified immunity, the burden is on the plaintiff

to establish that the official's conduct violated clearly established law.  Id.  Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct.  Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

### 2.    Qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. _____, 129 S. Ct. 808, 815 (January 21, 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To discharge this burden, the plaintiff must satisfy a two-prong test." Atteberry v .Nocana Gen. Hosp., 430 F.3d 245, 251-52 (5th Cir. 2005).  First he must claim that the defendants committed a constitutional violation under current law.  Id. (citation omitted).  Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  Id.

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer

mandatory.  <u>Pearson</u>, 555 U.S. at ___, 129 S. Ct. at 818. (receding from <u>Saucier v. Katz</u>, 533 U.S. 194 (2001)).

### 3.      Officer Deleon.

Plaintiff claims that Officer Deleon was deliberately indifferent to his safety and failed to protect him from the assault because he failed to ensure that another officer was working the kitchen floor.  Plaintiff claims that BOP regulations require a floor officer in the kitchen, that Officer Deleon was the kitchen administrator and knew of this rule but ignored it, and this failure to abide by the staffing rules amounts to deliberate indifference in this case.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners.  <u>Cantu v. Jones</u>, 293 F.3d 839, 844 (5th Cir. 2002) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)).  A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  <u>Cantu</u>, 293 F.3d at 844 (citing <u>Farmer</u>, 511 at 847).  Deliberate indifference describes a state of mind "more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety."  <u>Farmer</u>, 511 U.S. at 835.

A prisoner alleging an Eighth Amendment violation need not show that prison officials believed that harm would actually occur – "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  <u>Farmer</u>, at 842. A prison official's knowledge of the risk "can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it.

Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004).  It remains open to an official to prove that he was unaware of an obvious risk to inmate health and safety.  Farmer, 511U.S. at 848.

Plaintiff argues that the very fact that the BOP required an officer to be assigned to the kitchen floor recognizes that the kitchen area itself posed a more dangerous situation thus requiring extra personnel.  He claims further that Officer Deleon was the kitchen administrator, and as such, was aware of the risk when he failed to secure another officer on the kitchen floor that day.  Officer Deleon has failed to respond with any summary judgment evidence to refute plaintiff's claims.  Indeed, the only evidence ostensibly concerning Officer Deleon is the specific and special orders concerning the duties of a compound officer.  (DSJ Ex. 1, attachment A and B).  However, Officer Deleon has not refuted that he was the kitchen administrator, nor has he testified that he was the compound officer.  Defendants have failed to offer any report made at the time of the assault that would identify Officer Deleon's role and his actions on that date, and he has failed to offer any statement about his knowledge of BOP regulations or kitchen staffing.  Certainly Officer Deleon is in the best position to establish the basic facts, such as his job title, yet he has not taken the opportunity to do so.  Thus, a fact issue remains as to whether or not Officer Deleon knew of a substantial risk to plaintiff's health and safety and ignored that risk, and therefore, summary judgment in his favor is not appropriate.

### 2.     MLP Cabusao.

Plaintiff maintains that MLP Cabusao was deliberately indifferent to his serious medical needs because she failed to check on him after initialing rendering him medical care. MLP Cabusao contends that she treated plaintiff appropriately following the assault, and thereafter, she had no further encounters with plaintiff such that she could not have been deliberately indifferent to his serious medical needs.

Plaintiff's medical records establish that, following the assault at 6:45 a.m., MLP Cabusao dressed plaintiff's burns, gave him a Tetanus shot, gave him a cream to put on his burns, and prescribed an antibiotic and Ibuprofen.  (DSJ Ex. 2 at 1-2).  Plaintiff was then transported to the SHU, but no exact time was given.  Id. at 2.  Plaintiff was not seen by medical again until 1:00 p.m. the following afternoon.  Id. at 3.  In her July 24, 2007 administrative note, MLP Cabusao wrote: "follow up BID," meaning check on plaintiff twice a day, and this was not done.  MLP Cabusao has not offered her affidavit indicating when she got off work, whether or not she instructed staff at shift change to check on plaintiff, or any other explanation for why he was not seen for over 24 hours after suffering second degree burns.   Thus, a fact issue remains as to whether MLP Canusao was deliberately indifferent to plaintiff's serious medical needs.

### 3.     Ms. Rivers-Graham.

Plaintiff claims that on the third day following the assault, Ms. Rivers-Graham came to his cell to check on him, and then ordered that he be sent to a local hospital.  (DSJ at 9). He was then   taken to this unidentified hospital "where, upon the plaintiff's arrival there,

[Ms. Rivers-Graham] was informed that Brooke Army Hospital was more suitable, [and] she had him sent there."  Id.

According to plaintiff's medical records, there is no notation that Ms. Rivers-Graham ever visited plaintiff at his cell "to check on his wounds" as alleged by plaintiff.  Further, there is no evidence in his medical records reflecting that Ms. Rivers-Graham first sent him to a local hospital, or that he even went to another hospital before BAMC.  In fact, there is no *evidence* in the record as to what is Ms. Rivers-Graham's job title, her duties, or her involvement in this case.  Although defendant states that "by the nature of her position," she was required only to identify a suitable hospital for plaintiff, there is no summary judgment evidence to establish this fact.  There is no evidence whether Ms. Rivers-Graham is a medical employee or a prison administrator.  Moreover, if Ms. Rivers-Graham did go visit plaintiff cell-side and actually observed his burns, her decision to not take any further action, to not contact medical personnel, or to direct him to an inappropriate hospital, might state a claim of deliberate indifference.  Because Ms. Rivers-Graham is not mentioned anywhere in plaintiff's medical records, nor has she offered an affidavit or testimony as to her involvement, a fact issue remains for purposes of evaluating her conduct under § 1983 and whether or not she is entitled to qualified immunity.

**VII.    Conclusion.**

This is a case in which plaintiff's allegations alone stated a § 1983 claim for purposes of § 1915A screening, as well as surviving defendants' Rule 12(b)(6) motion to dismiss. Defendants are in possession of the facts or evidence that would refute plaintiff's claims, but

they have failed to offer any evidence to resolve the fact issues concerning his claims of deliberate indifference.  At this point, it is unclear what each defendant's job title is, what duties the job entails, and what involvement each defendant had with plaintiff following the assault.  Thus, genuine issues of material fact remain, and defendants are not entitled to summary judgment.  Thus, the motion to dismiss, and in the alternative, motion for summary judgment (D.E. 38), is DENIED.

ORDERED this 24th day of September, 2010.

_____

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE